# BANKERS AND SHIPPERS INSURANCE COMPANY OF NEW YORK *v.* ELECTRO ENTERPRISES, INC. ET AL.

[No. 50, September Term, 1979.]

*Decided June 4, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Samuel S. Smalkin,* with whom was *John H. Urner* on the brief, for appellant.

*William C. Wantz,* with whom were *Kaylor, Wantz & Douglas* on the brief, for Rosalie L. Turner, one of appellees. *Donald L. DeVries, Jr.,* with whom were *Charles E. Iliff, Jr.,* and *Semmes, Bowen & Semmes* on the brief, for Electro Enterprises, Inc. et al., other appellees.

ELDRIDGE, J., delivered the opinion of the Court.

The petitioner, Bankers and Shippers Insurance Company of New York (hereinafter "Bankers"), brought an action for a declaratory judgment that its insurance policy did not provide either coverage for or an obligation to defend its insureds against claims resulting from an airplane crash. After the declaratory judgment action was finally terminated, the defendants in that action brought the instant suit for attorneys' fees and expenses. The issues on this appeal are whether the insurer is obligated to reimburse the defendants in the declaratory judgment proceedings for reasonable attorneys' fees and expenses incurred as a result of the insurer's disclaimer of coverage, and whether the insurer is prevented by the declaratory judgment from raising certain defenses against the claims for attorneys' fees and expenses.

On April 30, 1973, Bankers issued an aircraft insurance policy on a Cessna airplane owned by the respondent Electro

Enterprises, Inc., of Hagerstown, Maryland (hereinafter "Electro"). The policy, with certain exclusions that will be set forth later, provided coverage for personal injury and property damage claims arising from an occurrence while the airplane was in flight. In addition, the policy provided that Bankers would defend the insured against claims within the policy's coverage.

While on a business trip from Hagerstown to Scottsdale, Arizona, in 1974, Electro's airplane crashed, killing everyone aboard. These included Earl Bittle (a pilot employed by Electro), Paul Erickson (another pilot and president of Electro), Caswell Nuger (an employee of Electro), Irvin Turner and Joseph Urie. As a result of the crash, three negligence actions were filed in the Circuit Court for Washington County by the survivors and personal representatives of Nuger, Turner and Urie, all presumably passengers on the flight. The three actions were as follows: Rosalie L. Turner filed suit against Electro; Marie Rogers Urie sued Electro and sued Sandra E. Mose and Deborah E. Gigeous, personal representatives of Paul Erickson's estate; Lillian Nuger sued Mose and Gigeous as personal representatives of Erickson's estate, sued Juanita Bittle who was personal representative of Earl Bittle's estate, and sued Cessna Aircraft Co. The Nuger action also included, as a plaintiff, the Pennsylvania Manufacturers Association Insurance Company which claimed a right of subrogation for Workmen's Compensation benefits paid to the Nuger estate. The defendants in these tort actions demanded that Bankers provide them with a defense.

Shortly thereafter, Bankers filed a declaratory judgment action, in the Circuit Court for Washington County, seeking a declaration that its policy did not afford any insurance coverage for the tort claims or duty to defend them. Bankers named as defendants all of the plaintiffs and defendants in the wrongful death suits. The policy language upon which Bankers relied for its argument of noncoverage was as follows (Item 7 of the Declarations): "The coverage afforded by this policy shall not apply while the aircraft is operated in flight by other than the following pilots: PAUL ERICKSON

AND WILFORD GOLDMAN." The policy exclusions further provided:

"*This Policy does not apply:*

\* \* \*

2. to any occurrence or to any loss or damage occurring while the aircraft is operated in flight by other than the pilot or pilots set forth under Item 7 of the Declarations."

Bankers raised two arguments based on this language. First, noting that Bittle had not been named as an approved pilot in Item 7 of the Declarations, Bankers appeared to argue that Bittle was actually operating the plane when it crashed. Bankers contended that there was no coverage when Bittle was piloting the plane. Second, Bankers argued in the alternative that the language in Item 7 of the Declarations should be interpreted as providing coverage *only* if Goldman was in the plane along with Erickson, and as not providing coverage if Goldman did not accompany Erickson while the plane was in flight. Consequently, according to Bankers, it was legally irrelevant whether, as a factual matter, Erickson alone, Bittle alone, or Erickson and Bittle together were operating the plane at the time of the crash. Because Goldman was not in the plane, as allegedly required by the policy, Bankers argued that the policy would not provide any coverage, and consequently, it did not have a duty to defend. Bankers sought a declaratory judgment that it should be "relieved of *any obligation to defend*" Mose, Gigeous, Electro and Bittle and that it had "*no coverage* under the policy . . . [for] *any* liability that may be adjudged" against them. (Emphasis supplied.)

In response, the declaratory judgment defendants disputed Bankers' interpretation of the policy provisions, argued that the policy would provide coverage as long as one of the named pilots was operating the plane, and maintained that Erickson was operating the plane. According to the defendants, there would be coverage if Erickson were

operating the plane regardless of whether or not Goldman was in the plane.[1] They requested a jury trial to decide the factual issue of whether Erickson or Bittle was operating the plane at the time of the crash.

After a full trial, the jury found that Erickson, and not Bittle, was operating the plane at the time of the crash. The trial court then interpreted the disputed policy provisions, concluding that the policy afforded coverage if Erickson were operating the plane, regardless of Goldman's absence or presence. The court declared that there was coverage under the policy and that "[t]he plaintiff is not relieved from defending cases filed against it in related proceedings arising out of the said accident." The declaratory judgment was affirmed by the Court of Special Appeals, *Bankers & Shippers Ins. v. Urie,* 38 Md. App. 232, 380 A.2d 243 (1977), and this Court denied a petition for a writ of certiorari, 282 Md. 729 (1978).

Thereafter, all of the declaratory judgment defendants brought the present action, again in the Circuit Court for Washington County, pursuant to Maryland Code (1974, 1980 Repl. Vol.), § 3-412 (a) of the Courts and Judicial Proceedings Article, for the reimbursement of the attorneys' fees and other expenses incurred in defending against the declaratory judgment action.[2] Moreover, Electro, Mose, Gigeous and Bittle additionally sought the attorneys' fees and other expenses incurred when they were forced to begin providing their own defense in the underlying wrongful death actions.

In response, Bankers generally denied that it was liable for any attorneys' fees. With regard to the fees incurred by Mose, Gigeous and Bittle, Bankers contended that it could be liable for their attorneys' fees only if it were required to

---

1. In addition, upon Bankers' initiation of the declaratory judgment action disclaiming any obligation to provide a defense, Mose, Gigeous, Bittle and Electro retained independent counsel, who proceeded to represent them in both the declaratory judgment action and the on-going proceedings in the tort suits for wrongful deaths.

2. Section 3-412 (a) provides: "Further relief based on a declaratory judgment or decree may be granted if necessary or proper."

provide them with a defense in the underlying tort actions. Bankers maintained that it was not obligated to defend them because the policy expressly excluded from coverage the tort claims against them. As to Bittle, Bankers argued that any tort claim against Bittle would necessarily have to allege, in order to recover, that Bittle was operating the plane at the time of the crash. However, because Bittle was not a named pilot in the policy and because Item 7 of the Declarations expressly excluded coverage if the plane were operated by other than a named pilot, Bankers argued that any claim against Bittle would have to allege facts that placed the claim outside of the coverage of the policy. Bankers argued that the Nuger tort action against Mose and Gigeous was excluded from coverage because the claim was, in effect, by an Electro employee (Nuger) against a fellow employee (Erickson) and, in addition, was covered by Workmen's Compensation insurance paid to the Nuger estate.

After a hearing, the trial court held that all declaratory judgment defendants were entitled to the attorneys' fees and expenses incurred in the declaratory judgment action. The court based its decision on the belief that an insurer who unsuccessfully brings a declaratory judgment action, attempting to disclaim coverage, must reimburse the successful defendants for the attorneys' fees incurred in that proceeding. However, because the fee petitions, according to the court, also included fees for work performed in the personal injury suits, the court decided that each party should receive 30% of the amount sought. All parties took appeals from the order awarding fees. Before any proceedings were held in the Court of Special Appeals, this Court issued a writ of certiorari.

I.

In the insurance policy issued to Electro, Bankers agreed that:

"1. Defense, Settlement, Supplementary Payments. With respect to such insurance as is afforded

by this Policy for bodily injury liability and for property damage liability coverages the Company shall:

(a) defend any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient.

\* \* \*

(e) reimburse the Insured for all reasonable expenses, other than loss of earnings, incurred at the Company's request."

With respect to similar policy provisions, this Court has held that an insurer is liable for the damages, including attorneys' fees, incurred by an insured as a result of the insurer's breach of its contractual obligation to defend the insured against a claim potentially within the policy's coverage, and this is so whether the attorneys' fees are incurred in defending against the underlying damage claim or in a declaratory judgment action to determine coverage and a duty to defend. *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 347 A.2d 842 (1975); *Gov't Employees Ins. v. Taylor,* 270 Md. 11, 22, 310 A.2d 49 (1973); *Cohen v. Am. Home Assurance Co.,* 255 Md. 334, 363, 258 A.2d 225 (1969); *Anderson v. Md. Casualty Co.,* 123 Md. 67, 71-72, 90 A. 780 (1914). As explained in *Brohawn v. Transamerica Ins. Co., supra,* 276 Md. at 409-410:

"The promise to defend the insured, as well as the promise to indemnify, is the consideration received by the insured for payment of the policy premiums. Although the type of policy here considered is most often referred to as liability insurance, it is 'litigation insurance' as well, protecting the insured

from the expense of defending suits brought against him. ... By clear and unequivocal language, ... [the insurer] has assumed the obligation of relieving its insured of the expense of defending an action alleging and seeking damages within the policy coverage."

Therefore, whenever an insured must conduct his own defense at his own expense as a result of an insurer's breach of a contractual duty to defend its insured, the insured may recover the expenses of that defense from the insurer. 7C J. Appleman, *Insurance Law and Practice* § 4691, pp. 238-240 (Berdal ed. 1979). Furthermore, the right of an insured to recover attorneys' fees in such a situation applies not only to the named insured of the policy but also to any person who is within the policy definition of an insured and against whom a claim alleging a loss within the policy coverage has been filed. *See, e.g., American States Insurance Company v. Angstman Motors, Inc.,* 343 F. Supp. 576 (D. Mont. 1972); *Standard Accident Ins. Co. of Detroit v. Hull,* 91 F. Supp. 65 (S.D. Cal. 1950).

## II.

Some of the defendants in the declaratory judgment suit, however, do not base their claims for attorneys' fees on the theory that Bankers failed to provide them with a defense to which they were contractually entitled. These are the plaintiffs in the underlying wrongful death actions, namely Turner, Urie, Nuger and Pennsylvania Insurance.[3] They assert that they were "insureds" within the literal language of the policy and that, therefore, they should be reimbursed for attorneys' fees pursuant to Bankers' promise in paragraph I (e) of the policy "to reimburse the Insured for all reasonable expenses ... incurred at the Company's request." The tort plaintiffs rely on the following policy language:

"II. Definition of 'Insured.' The unqualified word 'Insured' wherever used in this Policy with respect

---

**3.** In fact, these parties conceded that Bankers did not have any contractual obligation to provide them with a defense.

to Coverage ... includes not only the Named Insured but also any person while *using or riding in the aircraft* and any person or organization legally responsible for its use, provided the actual use is with the permission of the Named Insured." (Emphasis supplied.)

Turner, Urie, Nuger and Pennsylvania argue that as representatives of or parties standing in the shoes of persons "using or riding in the aircraft," they are insureds. It is asserted that Bankers knowingly "requested" that they incur the expenses of attorneys' fees by naming them as defendants in the declaratory judgment action. Accordingly, the tort plaintiffs maintain that as insureds, they may recover their attorneys' fees pursuant to Bankers' promise in paragraph I (e).

We disagree. Paragraph I of Bankers' policy expressly conditioned the promise contained in paragraph I (e) to only those expenses incurred with "respect to *such insurance as is afforded by this Policy* for ... *liability coverages.*" (Emphasis supplied.) These coverage provisions provided that Bankers will "pay on behalf of the Insured all sums which the *Insured shall become legally obligated to pay as damages* ... caused by an occurrence and arising out of the ownership ... or use of the aircraft." (Emphasis supplied.) Consequently, even though the tort plaintiffs may arguably be within the literal definition of insureds, the only expenses that Bankers agreed to reimburse were those relating to a claim filed *against* an insured for which the insured might become liable. These parties do not assert, and there is nothing in the record to indicate, that tort claims arising out of the crash for which they could become liable have ever been filed against them. In fact, they are the ones asserting tort claims. It is apparent, therefore, that the policy language upon which the tort plaintiffs rely does not obligate Bankers to reimburse them for the fees which they incurred. We hold that the trial court erred in awarding any fees to Turner, Urie, Nuger and Pennsylvania Insurance.

## III.

As a defendant in one of the personal injury suits, Cessna obviously had a claim asserted against it. However, because Cessna was neither a named insured, a person riding in or using the aircraft, nor an organization responsible for the aircraft's use, it does not even come within the definition of an insured in paragraph II of the policy. Therefore, there was no promise by Bankers either to defend Cessna or to reimburse it for its expenses. Consequently, we hold that Cessna also was not entitled to attorneys' fees.

## IV.

The claims for attorneys' fees and other expenses by Electro, Mose, Gigeous and Bittle rest on a different theory than the claims just considered. These parties, all defendants in the underlying tort actions, assert that they are entitled to recover their attorneys' fees because Bankers breached its contractual obligation to defend them against claims for which they might become liable.

In this Court, Bankers has conceded that Electro, as the named insured, is entitled to reimbursement for the attorneys' fees that are properly established to have resulted from Bankers' failure to defend, and it has tacitly conceded that it is liable for the attorneys' fees incurred by Mose and Gigeous in defending against the Urie claim.[4] Bankers nevertheless reiterates the arguments made below that its policy did not provide any coverage for the claim against Bittle or for the Nuger claim against Mose and Gigeous. Therefore, according to Bankers, it was not required to defend them and, consequently, is not liable for the attorneys' fees relating to these claims. In response, Mose, Gigeous, Bittle and Electro contend that the matter of coverage and a duty to provide a defense to the insured tort defendants was already adjudicated by the declaratory

---

4. Bankers acknowledged in its brief that it entered an appearance in the Urie tort case on behalf of Mose and Gigeous as a result of the trial court's declaration that there was coverage, and that the Urie claim is "covered under the policy and a defense owed with respect thereto."

judgment. Consequently, they argue that the doctrines of res judicata and/or collateral estoppel preclude Bankers from now offering new reasons or theories for denying the existence of coverage and a duty to defend them.

As set forth by this Court in *Alvey v. Alvey,* 225 Md. 386, 390, 171 A.2d 92 (1961):

> "The doctrine of *res judicata* is that a judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action, and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit, where the court had jurisdiction, proceedings were regular, and his omission was due to his own negligence."

The distinction between res judicata and collateral estoppel was described in *MPC, Inc. v. Kenny,* 279 Md. 29, 32, 367 A.2d 486 (1977), (quoting *Sterling v. Local 438, Etc.,* 207 Md. 132, 140-141, 113 A.2d 389, *cert. denied,* 350 U.S. 875, 76 S. Ct. 119, 100 L. Ed. 773 (1955)):

> " '. . . If the second suit is between the same parties and is upon the *same cause of action,* a judgment in the earlier case on the merits is an absolute bar, not only as to all matters which *were litigated* in the earlier case, but as to *all matters which could have been litigated* [res judicata]. If, in a second suit between the same parties, even though the *cause of action is different,* any determination of fact, which was *actually litigated* in the first case, is conclusive in the second case [collateral estoppel].' (citation omitted)." (Emphasis supplied.)

It is clear that the traditional principles of res judicata as described above are inapplicable in the context, as in this case, of a statutory action for further relief based on a declaratory judgment. The Maryland Uniform Declaratory

Judgments Act, Code (1974, 1980 Repl. Vol.), § 3-401 *et seq.* of the Courts and Judicial Proceedings Article, provides in § 3-403 (a) that a court "may declare rights, status, and other legal relations *whether or not further relief is or could be claimed,*" and § 3-411 provides that the declaration of rights "has the force and effect of a *final judgment or decree."* (Emphases supplied.) Furthermore, the Act provides in § 3-412 (a) that "[f]urther relief based on a declaratory judgment or decree may be granted if necessary or proper." [5] Thus, the statutory scheme expressly permits a party to bring one action requesting only a declaratory judgment and then to bring a separate action for further relief based on the rights determined by that judgment. In contrast, because res judicata precludes subsequent litigation of what could have been litigated in the first action, it requires that a party bring his entire claim, including a request for accrued damages or other relief, in one action, and prevents a second suit on the same cause of action for damages or other relief which had accrued but were not requested at the time of the first suit. *See, e.g., Missler v. Anne Arundel County,* 271 Md. 70, 78-79, 314 A.2d 451 (1974); *Ex parte Carlin,* 212 Md. 526, 129 A.2d 827 (1957); *Walzl v. King,* 113 Md. 550, 77 A. 1117 (1910). Consequently, the traditional principles of res judicata are inapplicable in this context, as they would prevent bringing the action for further relief that is expressly permitted by § 3-412(a).

In recognition of statutory schemes similar to Maryland's, the Restatement of the Law (Second), *Judgments* § 76, Comment *c* (Tent. Draft No. 3, 1976), explains:

> "c. *Effects as to matters not declared.* When a plaintiff seeks solely declaratory relief, the weight of authority does not view him as seeking to enforce a claim against the defendant. Instead, he is seen as merely requesting a judicial declaration as to the existence and nature of a relation between himself and the defendant. The effect of such a declaration,

---

**5.** Section 3-412 (b) states that the "application for further relief shall be by petition to a court having jurisdiction to grant the relief."

under this approach, is not to merge a claim in the judgment or to bar it. . . ."

However, as to matters actually *declared* by the judgment, it is conclusive. Section 76 of the Restatement itself states:

"§ 76. Declaratory Judgments

"A judgment in an action brought to declare rights or other legal relations of the parties is conclusive in a subsequent action between them as to the matters declared, and, in accordance with the rules of issue preclusion, as to any issues actually litigated by them and determined in the action."

Comments b and e go on:

"*b. Preclusion as to matters declared.* If a declaratory judgment is valid and final, it is conclusive, with respect to the matters declared, as to all persons who are bound by the judgment. This conclusive effect applies even as to a party who makes no appearance in the action. See Illustrations 1, 3, following Comment *e.* But in order to be bound, a person must have been an adversary of the prevailing party with respect to the matter declared. . . .

\*　　\*　　\*

"*e. Issue preclusion.* As stated in Comment *b,* a declaratory judgment has binding effect with respect to the matters declared whether or not there has been adversary litigation with respect to those matters. But beyond this, any preclusion with respect to the determination of issues will occur only in accordance with the general rules of issue preclusion, and the exceptions thereto, in §§ 68, 68.1. . . .

"The line between the preclusion described in Comment *b* and the more limited preclusion described here is necessarily indistinct . . . ."

In other words, as to *matters* declared by a declaratory judgment, it is conclusive. Apart from matters declared, the Restatement takes the position that preclusion will be governed by the general principles of "issue preclusion," *i.e.,* of collateral estoppel.[6]

Furthermore, the cases have consistently held that the matters raised and declared in a declaratory judgment are final and may not be relitigated in a separate, subsequent action for further relief based on that judgment. *See Adams v. Bear,* 87 Ariz. 288, 350 P.2d 751, 755 (1960); *Lyle Cashion Company v. McKendrick,* 227 Miss. 894, 87 So. 2d 289, 293-294 (1956); *Lopes v. Mallory,* 108 R.I. 694, 279 A.2d 450, 452 (1971). *Cf. Lortz v. Connell,* 273 Cal. App. 2d 286, 78 Cal. Rptr. 6, 11-13 (1969); *Williams v. Madison County Mutual Auto. Ins. Co.,* 40 Ill. 2d 404, 240 N.E.2d 602 (1968). *See also Himes v. Day,* 254 Md. 197, 206-207, 254 A.2d 181 (1969).

In the instant case, Bankers is precluded from litigating the matters which it now seeks to raise as defenses to the insured tort defendants' claims for attorneys' fees and expenses, because they are the very matters raised and declared in the declaratory judgment. The matters raised and expressly declared in the former action were whether Bankers' policy afforded *coverage* to and a *duty to defend* the appellees. Bankers' prayer for relief in the declaratory

---

6. We need not and therefore do not decide whether the preclusive effect of a declaratory judgment will in all situations be limited to only those matters declared by the judgment plus those issues precluded under principles of collateral estoppel. In other situations, such as when the original request for a declaratory judgment also includes a claim for coercive or other relief, or when a subsequent action has been filed either as a traditional action at law or equity or for another declaratory judgment, the courts have differed on the principles to be applied to determine the preclusive effect of a declaratory judgment. *See* Krone v. Lacy, 305 F.2d 245 (8th Cir. 1962); Valley Oil Company v. City of Garland, 499 S.W.2d 333 (Tex. Civ. App. 1973). *Compare* Slattery v. Maykut, 176 Conn. 147, 405 A.2d 76 (1978); Chandler v. Dubey, 378 A.2d 1096 (Me. 1977); Brick Tp. Ocean County v. Vannell, 55 N.J. Super. 583, 151 A.2d 404 (1959); Howe v. Nelson, 271 Minn. 296, 135 N.W.2d 687 (1965); University of New Hampshire v. April, 115 N.H. 576, 347 A.2d 446 (1975); In re Dahl's Estate, 196 Ore. 249, 248 P.2d 700 (1952), *with* North Shore Realty Corporation v. Gallaher, 99 So. 2d 255 (Fla. App. 1957); Jamaica Inn, Inc. v. Daley, 72 Ill. 2d 415, 381 N.E.2d 694 (1978), *reversing* 53 Ill. App. 3d 257, 368 N.E.2d 589; Sayles v. Bennett Avenue Development Corp., 258 Iowa 628, 138 N.W.2d 895 (1965); In re Ditz' Estate, 255 Iowa 1272, 125 N.W.2d 814 (1964).

judgment action broadly requested that the trial court declare that Bankers had "*no coverage* under the policy . . . [for] any liability that may be adjudged against the defendants, . . . Mose . . . Gigeous . . . Electro . . . [or] Bittle," and that it was "relieved of *any* obligation to *defend* . . . [these] defendants." (Emphasis supplied.) In their answer, these defendants expressly requested that the court declare that Bankers' policy did provide them with coverage and a defense. The trial court stated in its opinion: "The Court finds that the policy does ̄afford coverage, and that paragraph 7 does not operate . . . [as] an exclusion." The Court concluded that there was "coverage if either [Goldman or Erickson] was the pilot," and that Bankers was "not relieved from *defending*" the insured tort defendants in the suits filed against them. (Emphasis supplied.)

The defenses to the claims for attorneys' fees and expenses, raised by Bankers against the insured defendants in the wrongful death suits, were based upon the coverage of the policy and the obligation to defend. Bankers denied it had any duty to defend Mose, Gigeous or Bittle because the claims against them were excluded from the policy's coverage. With respect to Bittle, Bankers asserted it was not required to provide a defense because any claim against Bittle must "necessarily assert that he was piloting the plane, and therefore must necessarily allege facts which put the claim outside the *coverage* of the policy." (Emphasis supplied.) Not only is the gravamen of this defense framed in terms of coverage, but it was based on the same exclusionary clauses of the policy (Item 7 of the Declarations and paragraph 2 of the exclusions) that it originally relied on in the declaratory judgment action. Bankers' defense against Mose and Gigeous was similarly premised on the assertion that the Nuger claim was "excluded from . . . *coverage*" by the policy because the suit was by an employee against a fellow employee. (Emphasis supplied.) Consequently, it is apparent that the matters sought to be determined in both actions were precisely the same.

Bankers nevertheless argues that it should not be

precluded from raising these defenses because they were not raised as reasons for denying coverage and a duty to defend in the declaratory judgment action and, consequently, were not actually litigated therein. The fact, however, that a party offers new reasons or theories for the position originally advanced and adversely adjudicated in a declaratory judgment action, does not permit those reasons to be litigated if the result could be a determination in conflict with the matters originally declared. In *Harris v. Wallace,* 474 S.W.2d 878 (Ky. 1971), the plaintiff in a declaratory judgment action had requested that the court declare that the beneficiaries under a will had violated a condition of the will and declare how the estate should therefore be distributed. After a declaratory judgment adverse to the plaintiff's position, the plaintiff attempted to raise a new reason why a beneficiary had violated the condition in the will, requiring a new determination of the distribution of the estate, and argued that she was not precluded from raising this reason because it had not previously been advanced. The Court of Appeals of Kentucky refused, explaining (474 S.W.2d at 881):

> "Certainly, at least, there is nothing . . . that would allow relief *inconsistent with* the declaratory judgment, because that would destroy the very purpose of declaratory proceedings. So, in the first place, for the reason that the relief appellants want now would be inconsistent with the judgment fixing the proportionate interests of the parties, it could not be obtained through further proceedings. . . .

> "Had . . . [plaintiff] limited the demands of her complaint and amended complaint . . . it would have been improper for the trial court to direct the manner in which the estate should be distributed, because, as she rightfully contends, other issues might have had to be resolved before such a determination could be made. . . .

> " . . . The fact is that . . . [plaintiff] herself asked the trial court to tell her how to divide the

estate. . . . Only chaos could result if a litigant in a declaratory judgment action were permitted, after judgment, to raise new and further issues for the purpose of obtaining relief inconsistent with the judgment already entered.

"Since the judgment gave the appellant the relief demanded in her complaint, to-wit, a declaration of rights and interests of the parties to the estate in her hands, we hold that it was not premature, not erroneous, and that it is conclusive as to all issues that were or could have been raised by the parties with respect to the determination of those rights and interests."

In a situation quite similar to that in the present case, the Supreme Court of Minnesota declined to permit an insurer, who had unsuccessfully sought a declaratory judgment that its policy did not afford coverage, to offer, in a later action, both similar and different reasons for denying coverage. *Howe v. Nelson,* 271 Minn. 296, 135 N.W.2d 687 (1965). As the court explained (135 N.W.2d at 692-693):

"Thus, the prevailing party in a declaratory judgment action to construe an insurance policy or a will should be able to rely on that judgment to estop the defeated party from again attempting to have the same instrument construed in a subsequent declaratory judgment action. So, too, should the prevailing party be estopped from attempting to relitigate in order to win more rights under the instrument.

"The problem is only slightly more complex where, as here, the plaintiff in a declaratory judgment action would normally be the defendant in a coercive suit for money damages. Such a plaintiff should be estopped from bringing successive declaratory judgment actions in which he raises issues that might have been disposed of in the first suit. So, too, should he be estopped by a

declaratory judgment adverse to him from raising defenses in a subsequent coercive action against him that were adjudicated or might have been raised in the prior suit. . . .

\*   \*   \*

"We are convinced, therefore, that the Federal court fully construed all three insurance policies involved in the present litigation. The obvious advantages of an early adjudication of insurance coverage in a personal injury context should not be undercut by a retrial of legal relationships already adjudicated. . . .

"United Services clearly went to Federal court in order to fully litigate the issues of insurance coverage. It had its chance to present all its defenses in the forum of its choice and should not now be permitted, as defendant in a coercive action, to relitigate those issues or to bring up new issues that could have been litigated then." [7]

*See also Jensen v. Nationwide Mutual Insurance Company,* 158 Conn. 251, 259 A.2d 598 (1969); *Williams v. Madison County Mutual Auto. Ins. Co., supra,* 240 N.W.2d 602.

In the case at bar, Bankers, like the insurer in the *Howe* case, made a broad request for a determination whether its policy afforded *any* coverage or duty to defend. The declaratory judgment expressly adjudicated these matters

---

**7.** The Reporter's Note to Restatement of the Law (Second), *Judgments* § 76, Comment c, p. 32 (Tent. Draft No. 3, 1976), observed about the *Howe* decision that while "the result is described in terms reminiscent of . . . [res judicata], the case can be viewed as the application of issue preclusion . . . to the issue of coverage."

There is some language in *Howe* that might indicate that an insurance company may be precluded from raising not only matters declared in the declaratory judgment action, but also other matters concerning its obligations under its policy which could have been adjudicated in that action. If the court in *Howe* intended to go that far, then it would give res judicata effect to a declaratory judgment beyond that accorded by the Restatement. It is not necessary in this case for us to reach any conclusion concerning the language in *Howe*, or to take a position one way or the other on any possible conflict between the Restatement and other cases regarding the res judicata effect of declaratory judgments. See footnote 6 *supra.*

adverse to Bankers' position. Bankers is bound by that adjudication.

Moreover, the result we reach here is consistent with sound public policy. An insurance policy may contain numerous clauses that would independently effect exclusions from coverage. In addition, a single clause could give rise to multiple theories or reasons for excluding coverage. Having once broadly requested a determination of the policy's coverage and obligation to defend, it would undermine the stability of judicial decisions, as well as impose substantial burdens on the parties and the administration of justice, if an insurer were permitted repeatedly in separate actions to disclaim coverage based on each exclusionary clause or each new reason for exclusion.

Therefore, we hold that Bankers may not now raise as defenses new theories or reasons for its contention that there was neither coverage nor a duty to defend the insured defendants in the wrongful death actions. Bankers is liable to the insured tort defendants for the attorneys' fees and expenses incurred by them in defending against the declaratory judgment action and the underlying personal injury suits.[8]

## V.

The final issue that remains concerns the propriety of the trial court's decision to award Mose, Gigeous, Bittle and Electro only 30% of the amount of fees and expenses sought. The basis of this decision was the trial court's view that only those fees and expenses incurred in defense of the declaratory judgment action, and not those incurred in defending the underlying tort claims, were recoverable. All of the defendants in the declaratory judgment action took cross-appeals from this determination. However, since only the insured defendants in the underlying tort actions are entitled to any attorneys' fees and expenses, we shall limit our consideration to their arguments. Mose, Gigeous, Bittle

---

8. Consequently, we do not decide or intimate any opinion on the merits as to whether Mose, Gigeous or Bittle were entitled to a defense by Bankers in the circumstances of this case.

and Electro contend that the 30% figure was arbitrary and an abuse of discretion and that, as insureds, they were entitled to fees and expenses incurred in both the declaratory judgment and the tort actions. Bankers, in its appeal, also challenges the trial court's decision in this regard, contending that the claims for fees and expenses must be proven with the certainty required for proof of other damages, which, it insists, was not done in this case.

The right of Mose, Gigeous, Bittle and Electro to reimbursement for their attorneys' fees and expenses, incurred in defending the underlying damage suits and the declaratory judgment action, flows directly from the declaration that the policy did provide coverage and did require that the insurer provide a defense. Once this was determined, then it was clear that Bankers had breached its contractual obligation to provide a defense in the underlying tort suits and was liable for the resulting damages. As previously discussed in this opinion, the attorneys' fees and expenses, incurred in defending the underlying tort suits and the declaratory judgment action, constitute those resulting damages and are recoverable in an action for further relief based directly on the rights declared in the declaratory judgment. The trial court therefore erred in limiting damages to the fees and expenses incurred in defending the declaratory judgment action.

It is equally clear from the record, however, that the informal hearing conducted by the trial court neither required any real proof of the amount of the fees and expenses claimed nor provided Bankers with a realistic opportunity to challenge those fees and expenses. This was a case involving claims for attorneys' fees and expenses *as damages for a breach of contract,* and not one of those relatively unusual types of cases where the trial court is authorized to award the prevailing party in litigation before the court his reasonable attorneys' fees. Consequently, Bankers was entitled to have the amount of fees and expenses proven with the certainty and under the standards ordinarily applicable for proof of contractual damages. Instead, the parties merely submitted, prior to the hearing,

informal fee and expense petitions and made short, oral representations at the hearing of the amounts claimed. On remand, there should be a proper trial regarding the damages incurred by Mose, Gigeous, Bittle and Electro.

> *Judgment of the Circuit Court for Washington County reversed and case remanded for further proceedings not inconsistent with this opinion.*
>
> *One-half of the costs to be shared equally among Rosalie L. Turner, Marie Rogers Urie, Lillian Nuger, Pennsylvania Manufacturers Association Insurance Company and Cessna Aircraft Co.*
>
> *One-half of the costs to be paid by Bankers and Shippers Insurance Company of New York.*