947 F.2d 1498
 292 U.S.App.D.C. 129
 WASHINGTON HOSPITAL CENTER NATIONAL REHABILITATION HOSPITAL
v.
Todd B. COLLIER, Appellant,
v.
MD-INDIVIDUAL PRACTICE ASSOCIATION, INC., a Maryland
Corporation dba MD-IPA, Appellee.
 No. 90-7191, 90-7192.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 20, 1991.
Decided Nov. 5, 1991.
 
 [292 U.S.App.D.C. 130] Appeal from the United States District Court for the District of Columbia (C.A. Nos. 90-01264 and 89-02043).
 John R. Dugan, with whom David P. Sutton, Washington, D.C., was on the brief, for appellant.
 Christopher M. McMurray, with whom Charles Lee Eisen, Washington, D.C., was on the brief for appellees.
 Before WALD, D.H. GINSBURG, and RANDOLPH, Circuit Judges.
 Opinion for the Court filed by Circuit Judge D.H. GINSBURG.
 D.H. GINSBURG, Circuit Judge:
 
 
 1
 Todd Collier was rendered quadriplegic while playing touch football. Several months later, Collier's health insurer, appellee M.D. Individual Practice Association (MD-IPA), retroactively denied Collier coverage, claiming that he was not a full-time student, and therefore not an eligible dependent, at the time of his accident. The two hospitals that had treated Collier then sued him for payment. Collier in turn filed a third-party action against MD-IPA alleging breach of its contract to insure and various other counts. The district court granted MD-IPA summary judgment on the issue of coverage and dismissed Collier's other claims, and Collier appealed.
 
 
 2
 While this appeal was pending, the hospitals and MD-IPA reached a settlement that completely extinguished Collier's liability to the hospitals. That settlement also raised issues concerning our jurisdiction over, and the possible mootness of, Collier's claims against MD-IPA. Today we resolve those issues favorably to Collier's further prosecution of this case and certify to the Maryland Court of Appeals two questions of Maryland law respecting insurance contracts. We shall hold review of Collier's contract claim in abeyance pending that court's authoritative resolution of the state law issues.[292 U.S.App.D.C. 131] I. BACKGROUND
 
 
 3
 When Collier was injured, he received treatment first at the Washington Hospital Center and later at the National Rehabilitation Center, both located in Washington, D.C. The total cost of his treatment at these two hospitals exceeded $286,000.
 
 
 4
 Initially Collier's hospital bills were paid by MD-IPA, with whom Collier's mother maintained a health insurance policy. Under that policy, her dependent child between the ages of 19 and 22 was eligible for coverage only if he was a "full-time student" at a recognized college, university, or trade school. Collier turned 19 in May 1987 and during all relevant times was a student at Montgomery College, lived at home, and depended upon his mother for financial support.
 
 
 5
 Beginning with the spring semester of 1987, the College placed Collier on academic probation and allowed him to register for only six credits. In September 1987 Collier, mistakenly thinking that his probation had ended, tried to register for twelve or more credits for the fall semester. He was again allowed to register for only six credits, and hence was taking that number of credits when he was injured in September 1987.
 
 
 6
 In April 1988 MD-IPA informed Collier that he was not covered under his mother's policy because at the time of the accident he was not a "full-time student." (At least for purposes of financial aid and academic honors, Montgomery College requires enrollment in twelve or more credits for a student to be classified "full-time.") MD-IPA refused to pay for additional medical expenses and demanded that the hospitals refund the sums it had already paid.
 
 
 7
 The hospitals then brought diversity actions in the District Court for the District of Columbia against Collier and his mother, both citizens of Maryland, seeking payment for Collier's treatment. Collier answered the hospitals' complaints and filed this third-party action against MD-IPA seeking a declaratory judgment respecting his coverage and recovery of his attorneys' fees.
 
 
 8
 After limited discovery, the district court, concluding that the term "full-time student" is not ambiguous, granted MD-IPA's motion for summary judgment on Collier's breach of contract count. The district court also granted MD-IPA's motion to dismiss Collier's other claims for failure to state a legally cognizable cause of action pursuant to FED.R.CIV.P. 12(b)(6). The court entered stipulations of judgment against Collier and in favor of the hospitals in a total amount of more than $286,000.
 
 
 9
 Subsequent to Collier's filing this appeal, MD-IPA and the hospitals reached a settlement that fully satisfied the judgments against Collier.
 
 II. JURISDICTION
 
 10
 Because Collier and MD-IPA are both Maryland citizens, we consider first whether the district court properly exercised jurisdiction over Collier's third-party claims against MD-IPA. We inquire next whether this court has continuing jurisdiction over the parties in light of the settlement they reached after Collier filed this appeal.
 
 
 11
 Prior to the Supreme Court's decision in Finley v. United States, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), it was well settled that a federal court properly exercising jurisdiction in an original action also had "ancillary" jurisdiction over the defendant's third-party claim, regardless of whether there was an independent basis for jurisdiction over that claim. See Dery v. Wyer, 265 F.2d 804 (2d Cir.1959); 6 C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 1444, at 321-23 & n. 21-22. (1990 & 1991 Supp.); see also Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 375, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978); Moor v. County of Alameda, 411 U.S. 693, 714-15, 93 S.Ct. 1785, 1798-99, 36 L.Ed.2d 596 (1973). Thus, as in this case, the original defendant in a diversity suit could implead a non-diverse third-party defendant that was arguably liable to the third-party plaintiff "for all or part of the [original] plaintiff's claim against the third-party plaintiff." FED.R.CIV.P. 14(a); See Long v. District of Columbia, 820 F.2d 409, 417 (D.C.Cir.1987); [292 U.S.App.D.C. 132] Horton v. Baldwin, 713 F.Supp. 508 (D.D.C.1989).
 
 
 12
 In Finley the Supreme Court held that a plaintiff suing in federal court under the Federal Tort Claims Act may not assert against a pendent party a state law claim lacking an independent jurisdictional basis "even if the claim involving that other defendant meets the Gibbs test," 490 U.S. at 551, 109 S.Ct. at 2007 (emphasis in original), i.e., "the federal and nonfederal claims 'derive from a common nucleus of operative fact' and are such that a plaintiff 'would ordinarily be expected to try them in one judicial proceeding.' " Id. at 549, 109 S.Ct. at 2006, quoting United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). At the same time, the Court reaffirmed that "in a narrow class of cases a federal court may assert authority over such a claim [against a nonjurisdictional party] 'ancillary' to jurisdiction otherwise properly vested--for example, when an additional party has a claim upon contested assets within the court's exclusive control ..., or when necessary to give effect to the court's judgment ... [but] not solely on the basis that the Gibbs test has been met." 490 U.S. at 551, 109 S.Ct. at 2008 (citations omitted).
 
 
 13
 We do not read this passage, with its non-exhaustive illustrations of ancillary jurisdiction, to preclude the third-party claim now before us. The Court in Finley drew heavily upon its prior decision in Kroger, in which it held that a plaintiff in a diversity action may not "assert a claim against a third-party defendant when there is no independent basis for federal jurisdiction over that claim." 437 U.S. at 367, 98 S.Ct. at 2398. In Kroger the Court expressly recognized "that the exercise of ancillary jurisdiction over nonfederal claims has often been upheld in situations involving impleader, cross-claims or counterclaims." Id. at 375, 98 S.Ct. at 2403. Distinguishing the plaintiff's claim in that case from other types of nonfederal claims over which a federal court has ancillary jurisdiction, the Court noted:
 
 
 14
 A third-party complaint depends at least in part upon the resolution of the primary lawsuit. Its relation to the original complaint is thus not mere factual similarity but logical dependence. [In addition,] ancillary jurisdiction typically involves claims by a defending party haled into court against his will.... A plaintiff cannot complain if ancillary jurisdiction does not encompass all of his possible claims ..., since it is he who has chosen the federal rather than the state forum and must thus accept its limitations.
 
 
 15
 Id. at 376, 98 S.Ct. at 2404 (citations omitted). As a defendant haled into federal court who then impleads his insurer as a third-party defendant, liable over to him for some or all of the amount for which he is held liable in the original action, Collier is on the jurisdictional side of both the distinctions drawn in Kroger. Accord King Fisher Marine Service, Inc. v. 21st Phoenix Corp., 893 F.2d 1155 (10th Cir.1990); Horton, 713 F.Supp. at 510. See also 28 U.S.C.A. § 1367(a) (West Supp.1991) (prospectively overruling Finley by conferring "supplemental jurisdiction" over all claims "so related to claims in [an] action with[ ] ... original jurisdiction that they form part of the same case or controversy under Article III"). Therefore we hold that the district court properly exercised ancillary jurisdiction over Collier's claim against MD-IPA.
 
 
 16
 It follows that this court has jurisdiction over Collier's appeal, notwithstanding the insurer's settlement with the hospitals. To hold that jurisdiction can somehow lapse for want of diversity after the original defendant has perfected and properly pursued his third-party claim in federal court would only squander scarce resources--those of the courts as well as those of the parties. See Dery, 265 F.2d at 808. It would also discourage settlement between the original diverse parties; an insured would be less inclined to settle with a diverse plaintiff if the result were that he could no longer pursue his pending third-party action against his non-diverse insurer, but must instead decamp from the federal court only to start anew in a state court.[292 U.S.App.D.C. 133] III. MERITS
 
 
 17
 Collier alleges that MD-IPA breached its insurance contract by denying him coverage, improperly terminated his coverage under the policy, was estopped from rescinding his coverage by virtue of having paid for Collier's initial expenses, breached a fiduciary duty owed him pursuant to the Consolidated Omnibus Reconciliation Act of 1985, 42 U.S.C. § 300bb-1 et seq. (COBRA), and failed to fulfill its threshold notice obligations to him under COBRA. None of these claims is of sufficient merit to warrant discussion here, except the breach of contract count. As to that count, Collier argues (1) that the policy term "full-time student" is ambiguous, so that the district court erred in entering summary judgment against him; and (2) that he is entitled under the contract to recover his reasonable attorneys' fees incurred in this litigation to compel coverage.
 
 A. Mootness
 
 18
 MD-IPA contends that this appeal is moot because (1) the insurer's settlement with the hospitals extinguished Collier's liability to them, (2) his potential liability to other care providers who have not sued him is speculative, and (3) Collier's claim for attorneys' fees cannot by itself sustain this appeal as a live "case or controversy." Collier does not dispute (1) that the settlement discharged his liability to the hospitals for the principal amounts involved in this litigation. We agree with MD-IPA that (2) Collier's potential liability to care providers not involved in the settlement is so speculative that his request for a declaratory judgment respecting coverage is moot; not one of those care providers has sued or even threatened to sue him. (Additionally, in the unlikely event that one of those providers should sue him, Collier could and likely would defend by invoking the statute of limitations. See Md.Code Ann., Courts and Judicial Proceedings, § 5-101.) Thus, unless (3) Collier's claim for the attorneys' fees he incurred in this action saves this case from mootness, we have no occasion to consider the merits of Collier's appeal on the issue of his coverage under the insurance contract.
 
 
 19
 In urging that Collier's claim for attorneys' fees cannot save this case from mootness, MD-IPA relies principally upon our decision in Friends of Keeseville, Inc. v. Federal Energy Regulatory Commission, 859 F.2d 230, 233 n. 7 (D.C.Cir.1988), where we said:
 
 
 20
 A request for attorney's fees does not preserve a case which is otherwise moot. See Monzillo v. Biller, 735 F.2d 1456, 1463 (D.C.Cir.1984). The interests in judicial economy served by consistent application of the mootness doctrine would be largely undermined if appellate courts undertook to resolve questions of law which had no effect on the parties save for their possible relevance to a subsequent ancillary dispute over attorneys' fees.
 
 
 21
 But in so arguing MD-IPA implicitly mischaracterizes Collier's claim for attorneys' fees. Collier does not seek attorneys' fees in "a subsequent ancillary dispute," such as might have been brought by the appellant in the Keeseville case pursuant to a federal fee shifting statute. On the contrary, Collier claims his attorneys' fees as an element of damages stemming from MD-IPA's alleged breach of the contract now in suit. Settlement of the principal element of his damage claims does not moot this case, therefore, any more then would the settlement of one count moot a case initiated by a two-count complaint.
 
 
 22
 In order to establish his entitlement to attorneys' fees, Collier must first show that MD-IPA breached its contractual obligation to pay for his medical expenses. If he can do so, then it remains to be determined whether he is entitled to attorneys' fees notwithstanding the silence of the contract on that score.
 
 
 23
 B. "Full-time Student"
 
 
 24
 On the merits of his coverage claim, Collier contends that the district court erred in holding that the term "full-time student" is unambiguous; the court noted that the term is "frequently employed by colleges and universities," and thought that "the contractual expectations of the parties are [292 U.S.App.D.C. 134] fairly measured by reference to the definition provided by the applicable institution." Although the district court acknowledged the general principle that the choice between reasonable alternative interpretations of an insurance contract should be resolved in favor of coverage, see, e.g., Schuler v. Erie Ins. Exchange, 81 Md.App. 499, 568 A.2d 873, 877 (1990), the court thought it "beyond reason and common sense to interpret the policy as one that allows the claimant to obtain coverage simply by expressing an intent [to attend school full time]."
 
 
 25
 Collier urges that, as used in a contract for health insurance, the term "full-time student" is ambiguous because it is susceptible to more than one equally plausible definition. In contrast to MD-IPA's proposed definition, which incorporates the criteria used by the relevant school (including the number of credits for which a student is registered), Collier argues that a "full-time student" is any student in "continuous attendance during the normal school year" or "a person who regularly attends classes as his primary daily occupation." Using either of these definitions, Collier claims that he was a full-time student at the time of his accident; even while taking only six credits he was, he says, "fully engaged in the ongoing pursuit of an education to the best of [his] ... academic abilities."
 
 
 26
 We can find no Maryland precedent interpreting the meaning of "full-time student" to determine coverage under a health insurance policy, although other jurisdictions have addressed this question. See Klein v. Empire Blue Cross and Blue Shield, 569 N.Y.S.2d 838 (App.Div.1991); Bancale v. RCA Service Co., 1987 WL 6240, No. 10051 LEXIS (Oh.App. Feb., 1987); Blue Cross and Blue Shield of Florida, Inc. v. Cassady, 496 So.2d 875 (Fla.App.1986); Massey v. Board of Trustees, 500 So.2d 864 (La.App.1986); Margie Bridals Inc. v. Mutual Ben. Life Ins. Co., 62 Ill.App.3d 542, 19 Ill.Dec. 547, 379 N.E.2d 62 (1978); Society of New York Hospital v. Malsky, 86 Misc.2d 221, 382 N.Y.S.2d 433 (Civ.Ct.1976). Resolution of this issue may have a significant impact upon Maryland health insurance practices. Accordingly, we certify the following question to the Maryland Court of Appeals:
 
 
 27
 Does the term "full-time student," when used as a condition of coverage in a health insurance policy, unambiguously incorporate the criteria of the relevant educational institution?
 
 
 28
 If the Maryland Court of Appeals answers this question in the affirmative, then we shall affirm the district court's grant of summary judgment on the contract issue. If, however, the Maryland Court of Appeals holds that "full-time student" is ambiguous, then we ask that it proceed to address the attorneys' fees question that we frame below.
 
 C. Attorneys' Fees
 
 29
 Although the general rule in Maryland is that the prevailing party does not recover his attorneys' fees, Maryland courts have awarded attorneys' fees as an element of damages "where the wrongful acts of [a] defendant [have] involved the plaintiff in litigation with others, or placed him in such relations with others as make it necessary to incur expense to protect his interest." McGaw v. Acker, Merrall & Condit Co., 111 Md. 153, 160, 73 A. 731, 734 (1909). The Maryland Court of Appeals has applied this exception in the specific context of a breach of contract suit against an insurer. See, e.g., Continental Casualty Co. v. Bd. of Educ., 302 Md. 516, 489 A.2d 536 (1985); Bankers & Shippers Ins. Co. v. Electro Enterprises, Inc., 287 Md. 641, 415 A.2d 278 (1980); Brohawn v. Transamerica Ins. Co., 276 Md. 396, 347 A.2d 842 (1975); Cohen v. American Home Assur. Co., 255 Md. 334, 258 A.2d 225 (1969). In each such case, however, there was either a "duty to defend" clause in the policy or the court otherwise described the "loss" against which the claimant was insured as including the costs of legal representation.
 
 
 30
 Although there may be a compelling state policy reason for holding that a health insurer must pay the reasonable attorneys' fees incurred by an insured who prevails in a coverage dispute, see Hayseeds, Inc. v. State Farm Fire & Cas., 352 [292 U.S.App.D.C. 135] S.E.2d 73 (W.Va.1986) (property insurer liable for attorneys' fees incurred to compel coverage), the fact remains that Collier's health insurance contract does not expressly obligate MD-IPA to pay for the attorneys' fees he incurred attempting to compel coverage. The present case may be distinguishable on this ground from the Maryland cases cited above. Recognizing, however, that the precise issue presented by this case, although important and likely to recur, has not been settled under Maryland law, we certify the following question to the Maryland Court of Appeals pursuant to Md.Cts. & Jud.Proc.Code Ann. §§ 12-601 to 12-609:
 
 
 31
 Under Maryland law, may an insured covered by a health insurance policy recover, as an element of contract damages, the attorneys' fees he reasonably incurs in order to compel coverage, where the policy does not expressly provide for such recovery and the insurer denied coverage in good faith?
 
 
 32
 If the Maryland Court of Appeals answers in the affirmative, then we shall remand this case to the district court so that Collier may recover the reasonable attorneys' fees he incurred in connection with this action. If the Maryland Court of Appeals answers in the negative, then this case is at an end, and we shall affirm the judgment of the district court, albeit upon a ground it did not reach.
 
 IV. CONCLUSION
 
 33
 Pursuant to Part III of this opinion, we certify two questions to the Maryland Court of Appeals. Part I of this opinion shall constitute the statement of relevant facts required by the Maryland certification statute. See Md.Cts. & Jud.Proc.Code Ann. § 12-603 (1989).
 
 
 34
 It is so ordered.