# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

LAUREL SAND & GRAVEL,
INCORPORATED,

　　　　　*Plaintiff-Appellant,*

v.

SHARI T. WILSON,

　　　　　*Defendant-Appellee.*

No. 07-1046

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, District Judge.
(1:06-cv-00615-JFM)

Argued: December 4, 2007

Decided: March 5, 2008

Before NIEMEYER and GREGORY, Circuit Judges,
and James P. JONES, Chief United States District Judge for the
Western District of Virginia, sitting by designation.

---

Affirmed by published opinion. Judge Gregory wrote the opinion, in
which Judge Niemeyer and Judge Jones joined.

---

## COUNSEL

**ARGUED:** Mark John Hardcastle, Rockville, Maryland, for Appellant. Adam Dean Snyder, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellee. **ON BRIEF:** Terry B. Blair, Baltimore, Maryland,

for Appellant. Douglas F. Gansler, Attorney General, Baltimore, Maryland, for Appellee.

## OPINION

GREGORY, Circuit Judge:

Laurel Sand & Gravel, Inc., a mining corporation, appeals from the district court's dismissal of its claims on the basis of res judicata and abstention. Since Laurel raised and adjudicated the same claims in a state court proceeding and failed to exhaust its administrative remedies before filing suit in federal court, we affirm the district court's decision.

### I.

In 1991, the Maryland General Assembly enacted the Surface Mine Dewatering Act ("Dewatering Act") to protect property owners in counties where karst terrain[1] is located from the dewatering of surface mines. The Dewatering Act established zones of dewatering influence for all mines and imposed remedial measures on a miner if a well within the zone of influence failed due to declining ground water or if damage was caused by subsidence. Md. Envir. Code § 15-812(c). Specifically, the Dewatering Act provides that a licensed miner within the zone of influence must:

> (1) Replace, at no expense to the owner of real property that is affected by the surface mine dewatering, a water supply that fails as a result of declining ground water levels; and (2) upon a determination by the Department of proximate cause after the permittee has received proper notice and an opportunity to respond and provide information, pay monetary

[1] "Karst terrain" is defined as an irregular topography that is: (1) caused by a solution of limestone and other carbonate rock; and (2) characterized by closed depressions, sinkholes, caverns, solution cavities, and underground channels that, partially or completely, may capture surface streams. Md. Envir. Code § 15-813(a)(3).

compensation to the affected property owner or repair any damage caused as a result of the sudden subsidence of the surface of the land.

Md. Envir. Code § 15-813(c). However, the Maryland Department of Environment ("MDE") may not require a licensed miner to replace water supplies if the miner demonstrates to the MDE by clear and convincing evidence that pit dewatering is not the proximate cause of the loss water supply. *Id.* § 15-813(f). The MDE must also provide the licensed miner the opportunity for a contested hearing. *Id.* § 15-813(g).

The day after the Dewatering Act became law, Laurel Sand & Gravel, Inc. ("Laurel"), a Maryland corporation, engaged in the business of mining limestone and other aggregates in Maryland and West Virginia, along with nine other licensed miners, formed the Maryland Aggregates Association and challenged the constitutionality of the Dewatering Act. In *Maryland Aggregates, Inc. v. State of Maryland*, 655 A.2d 886 (Md. 1995), Laurel facially attacked the constitutionality of the Dewatering Act. Laurel contended that the Dewatering Act's statutory procedures for resolving claims were constitutionally deficient and that the contested case hearing process violated procedural due process. The Maryland Court of Appeals rejected Laurel's constitutional claims and dismissed the case.

In February 2002, eleven years after the law's enactment, the MDE notified Laurel that a shallow residential well in its zone of influence was dry due to declining ground water. The well belonged to David Thomas ("Thomas well"). MDE informed Laurel that, under the Dewatering Act, it was required to replace the well or lose its mining license for noncompliance. Laurel replaced the well at a cost of $3,000 and initiated a contested case hearing.

At a hearing before an administrative law judge ("ALJ"), Laurel argued that a recent severe drought — not its dewatering operations — was the proximate cause of the Thomas well's failure. In addition, Laurel argued that *Maryland Aggregates* violated federal constitutional law. (J.A. 33.) The ALJ found that because Laurel failed to prove by clear and convincing evidence that it was not the proximate cause of water supply loss to the Thomas well, it had violated the

Dewatering Act. Laurel filed exceptions to the ALJ's proposed decision. However, the MDE's Final Decision Maker adopted the ALJ's findings and conclusions. Laurel did not seek judicial review of the final decision in the Maryland state courts.

In lieu of seeking judicial review of the administrative decision, a year later, Laurel filed suit in federal district court against Maryland's Secretary of the Environment, Shari T. Wilson, arguing that the Dewatering Act violates the Due Process and Takings Clause of the United States Constitution. The district court dismissed Laurel's action on the grounds that: (1) res judicata precluded Laurel from raising the same claims litigated in *Maryland Aggregates*; (2) Laurel lacked a property interest to sustain a due process and takings claim under the Constitution; and (3) *Younger* abstention applied.

## II.

We review a district court's decision to grant a motion to dismiss pursuant to Rule 12(b)(6) *de novo. Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996). A district court's decision to abstain under *Younger v. Harris*, 401 U.S. 37 (1971), however, is reviewed for abuse of discretion. *Nivens v. Gilchrist*, 319 F.3d 151, 153 (4th Cir. 2003).

## III.

### A.  *Res Judicata*

Laurel challenges the constitutionality of the Dewatering Act arguing that § 15-813(c) improperly requires it to immediately replace another's dry well in an established zone of influence. Since this process occurs without a pre-deprivation hearing, Laurel argues that the Dewatering Act violates its procedural due process rights under the Fifth and Fourteenth Amendments of the Constitution. In addition, Laurel contends that the Dewatering Act enforces strict liability by improperly shifting the burden of proof to the miner and that the $3,000 expended in replacing the Thomas well constitutes an unconstitutional taking. Laurel seeks a declaratory judgment, injunctive relief, and damages under 42 U.S.C. § 1983. The district court held

that because these claims were litigated in *Maryland Aggregates*, res judicata and collateral estoppel precluded Laurel from raising them again.

Res judicata, also known as claim preclusion, bars a party from relitigating a claim that was decided or could have been decided in an original suit. *Pueschel v. United States*, 369 U.S. 345, 355 (4th Cir. 2004). The doctrine was designed to protect "litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). Generally, the preclusive effect of a judgment rendered in state court is determined by the law of the state in which the judgment was rendered. Under Maryland law, the elements of res judicata are: (1) that the parties in the present litigation are the same or in privity with the parties in the earlier dispute; (2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and (3) that there has been a final judgment on the merits. *Anne Arundel County Bd. of Educ. v. Norville*, 887 A.2d 1029, 1037 (Md. 2005)(*citing Colandrea v. Wilde Lake Comm. Ass'n.*, 761 A.2d 899, 910 (2000)).

Laurel argues that res judicata is inapplicable because an as-applied challenge to the Dewatering Act's constitutionality is a different claim than the facial challenge raised in *Maryland Aggregates*. The MDE argues that the claims are not different and were raised in *Maryland Aggregates*. Because it is undisputed that this case involves the same parties and a final judgment on the merits was rendered in *Maryland Aggregates*, the only issue is whether the two causes of action are the same for purposes of res judicata.

The test for deciding "whether the causes of action are identical for claim preclusion purposes is whether the claim presented in the new litigation 'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment.'" *Pittson Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999)(quoting *Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir. 1986)). "Newly articulated claims based on the same [transactional] nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the

earlier action." *Tahoe Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003).

To determine whether res judicata applies, we must compare the allegations set forth in *Maryland Aggregates* with the allegations set forth in Laurel's Amended Complaint. In *Maryland Aggregates*, Laurel sought a declaratory judgment holding the Dewatering Act unconstitutional on a number of grounds and an injunction against the enforcement and implementation of the Dewatering Act. Specifically, Laurel argued: (1) the Dewatering Act violated its right to substantive due process because there was no rational basis for the legislation; (2) the statute denied equal protection of the law to resident counties unaffected by the Dewatering Act; (3) the Dewatering Act interfered with the mine operators' constitutional rights to a jury trial; (4) the Dewatering Act deprived them of property without just compensation; and (5) that the statutory procedures for establishing zones of dewatering influence and for resolving claims under the Dewatering Act were constitutionally deficient.

Laurel maintains that it was denied due process by not receiving a pre-deprivation hearing before being found liable to replace the Thomas well. Although Laurel also emphasizes that its current claim is an as-applied challenge to the Dewatering Act, this claim is not sufficiently different from the substantive due process claim raised in *Maryland Aggregates* challenging the enactment of the statute.

In *Tahoe Sierra Preservation Council*, the Ninth Circuit noted that "[o]ften, an as-applied challenge will not be precluded by an earlier facial challenge because the 'transactional nucleus of facts' surrounding the enactment of the regulation will be different from the nucleus of facts involved when that regulation is applied to a particular property." 322 F.3d at 1080. However, the Ninth Circuit went on to stress that when the conduct now alleged to cause harm involves the same nucleus of facts addressed in the prior complaint, and any claim concerning the conduct could have been brought in the prior action, res judicata applies. *Id.*

Similarly, in *Walgreen Co. v. Louisiana Department of Health and Hospital*, Walgreens brought an "as applied" challenge to the constitutionality of Louisiana's Department of Health regulations governing

prescription drug reimbursements. 220 Fed. Appx. 309, 312 (5th Cir. 2007)(unpublished). Since Walgreens had previously challenged the facial validity of the regulations, the Fifth Circuit held that Walgreens could have raised its arguments in the prior challenge and, therefore, the claims in the subsequent suit were barred by res judicata.

Indeed, Laurel could have raised its procedural due process claim in *Maryland Aggregates* along with its substantive due process claim. Even though the MDE had not promulgated regulations establishing an administrative process to the resolution of water or property damage claims at the time of *Maryland Aggregates*, Laurel was aware that the Dewatering Act provided the MDE with the authority to initially determine a mine operator's liability[2] and that a mine operator aggrieved by the determination is entitled to demand a contested hearing at the administrative level, which is subject to judicial review. Thus, at the time of *Maryland Aggregates* Laurel could have challenged the lack of a pre-deprivation hearing.[3] As a result, Laurel's "as applied" claim itself was subsumed by the decision in *Maryland*

---

[2]In footnote 18 of *Maryland Aggregates*, the Court notes that:

> In its reply brief, Maryland Aggregates also objects to the procedures for establishing claims to compensation under the Act. The Act provides that "[t]he Department shall adopt regulations to establish an administrative process to expedite the resolution water supply loss or property damage claims arising under this section." The Department has not yet promulgated any such regulations because of the injunction against enforcement of the Act. Furthermore, while Maryland Aggregates argues that a mine operator is not entitled to judicial review of decisions relating to compensation, we agree with the State that a mine operator or property owner is entitled to review of a 'decision of [the Department of Natural Resources] regarding a finding of proximate cause relating to water supply failure or property damage within a zone of dewatering influence. This decision is reviewable first as a contested case hearing . . . .' A party aggrieved by the result of the contested case hearing may seek judicial review in the circuit court.

(J.A. 27.) (internal citations omitted)

[3]The MDE argues that in fact Laurel raised these claims in *Maryland Aggregates* but that they were unsuccessful.

*Aggregates*. Laurel's challenge to the lack of a pre-deprivation hearing, essentially challenges the *Maryland Aggregates* Court's determinations that the Act provides all the due process that is necessary to comport with the state and federal constitution. *See Mears v. Town of Oxford, Md.*, 762 F.2d 368 (4th Cir. 1985)(claim preclusion applies if the cause of action is the same and if the same evidentiary facts would sustain both actions).

Nevertheless, Laurel contends that res judicata is also inapplicable because *Maryland Aggregates* was a declaratory action. Laurel argues that declaratory actions, under Maryland law, are exceptions to the res judicata doctrine, which only applies if the matter contested was actually raised and decided and not as to matters which could have been decided. In support, Laurel cites *Bankers and Shippers Insurance Co. of New York v. Electro Enterprise Inc.*, 415 A.2d 278 (Md. 1980). In *Bankers*, the Maryland Supreme Court adopted the Restatement Second of Judgments approach holding that the preclusive effect of declaratory judgments was limited to matters actually declared by the judgment. *Bankers*, 415 A.2d at 654. As to matters not declared, a litigant who solely sought a declaratory judgment in the prior proceeding is not precluded from bringing those claims. However, the Court notably declined to decide whether the same would be true if "the original request for a declaratory judgment also include[d] a claim for coercive or other relief." *Id.*

MDE argues that *Bankers* is inapplicable here because: (1) *Maryland Aggregates* did not solely seek declaratory relief; and (2) Laurel's present claims are not based on the rights determined by the judgment in *Maryland Aggregates*. While it is true that courts have limited the preclusive effect of declaratory judgments, declaratory judgments have no limiting effect if coercive relief such as damages or an injunction is also sought. Federal courts have consistently held that the declaratory judgment exception applies only if the prior action solely sought declaratory relief. "By asking for coercive relief (the injunction) in the first suit, the plaintiff lost the right to invoke the declaratory judgment exception." *Stericycle, Inc. v. City of Delavan*, 929 F.Supp. 1162, 1164 (E.D.Wis. 1996)(citing *Cimasi v. City of Fenton*, 838 F.2d 298 (8th Cir. 1988) and *Mandarino v. Pollard*, 718 F.2d 845, 848 (7th Cir. 1983)). It is undisputed that, in *Maryland Aggregates*, Laurel sought both declaratory relief and an

injunction against enforcement and implementation of the Dewatering Act. Thus, the declaratory judgment exception is inapplicable. Since the Maryland Supreme Court's finding that the statute was not constitutionally deficient constitutes a final judgment on the merits and Laurel's current claim could have been brought in the prior action, the district court properly found that res judicata bars Laurel's claims.

B. *Takings Claims*

Laurel also challenges the district court's dismissal of its takings claim. MDE argues that Laurel's "as applied" takings claim fails as a matter of law. The district court found that "the Dewatering Act's imposition of a duty upon mine owners to pay the costs of constructing new wells on adjacent property [did] not itself deprive the mine owners of any interest in their own real property." (J.A. 200.) The district court further noted that the cost of replacing the Thomas well was only $3,000 and, thus, the cost did not deny Laurel use of its own real property.

The Fifth Amendment of the United States Constitution prohibits the taking of private property without just compensation. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528 (2005). To determine whether a constitutional taking has occurred, we focus on three factors: the economic impact of the regulation, the extent to which the regulation interferes with the investment-backed expectations, and the character of the governmental action. *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). The aim of the takings clause "is to prevent the government 'from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *Id.* at 520 (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)). Therefore, the party challenging the governmental action as an unconstitutional taking bears a substantial burden of showing that "justice and fairness" requires that the government compensate for any economic injuries caused by public action. *E. Enter. v. Apfel*, 524 U.S. 498 (1998).

The Dewatering Act's remedial scheme provides compensation to injured landowners when miners' dewatering causes injury. Maryland's desire to require miners to compensate injured landowners is a valid interference with property to adjust the benefits and burdens

of economic life as well as promote the common good. It is not unreasonable, unfair, or unjust to require Laurel to pay for damages caused by its mining. Despite Laurel's arguments, the Dewatering Act's remedial scheme is a far cry from the government "short-changing" a property owner to improve the public condition. *See Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922). Instead, the character of the government action here is both legitimate and equitable.

Moreover, Laurel fails to identify any property taken for public use or specify a property interest taken by the Dewatering Act. This fact alone is enough, as the district court found, to dismiss Laurel's takings claim. Even still, there is no doubt that the Dewatering Act has not forced a considerable economic impact upon Laurel. In eleven years, Laurel has had to replace one well for $3,000. Proportionally speaking, Laurel realized its investment-backed expectations without being substantially burdened by the Dewatering Act.

Thus, the district court properly found that an unconstitutional takings has not occurred.

## C.  *Younger Abstention*

Finally, Laurel argues that the district court erred in abstaining from deciding its claims under *Younger v. Harris*. The district court found that Laurel "prematurely terminated" the state proceedings by not appealing the adverse administrative decision to the Maryland Circuit Court. Laurel maintains that the doctrine of abstention is inapplicable because: (1) its claim concerns matters essentially legislative in nature; (2) it seeks wholly prospective relief; (3) the administrative hearing was not coercive; (4) this matter is not a case of vital or paramount state concern; and (5) there is bias at the administrative level.

The doctrine of abstention articulated in *Younger* requires a federal court to abstain from interfering in state proceedings, even if jurisdiction exists, if there is:

> (1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and

(3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit.

*Moore v. City of Asheville*, 396 F.3d 385, 390 (4th Cir. 2005) (citing *Nivens*, 319 F.3d at 153). "*Younger* abstention represents an accommodation between a state's pursuit of important interests in its own forum and the federal interest in federal adjudication of federal rights." *Telco Comm'ns, Inc. v. Carbaugh*, 885 F.2d 1225, 1229 (4th Cir. 1989).

In arguing that *Younger* is inapplicable, Laurel claims that there are no ongoing state proceedings and that the administrative adjudication of its claim was a non-coercive legislative action. While *Younger* does not require abstention in deference to a state judicial proceeding reviewing a legislative or executive action, this case does not concern a legislative action. *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 368 (1989). The administrative hearing procedures are clearly coercive and "judicial in nature" — not legislative. *See Harper v. Pub. Serv. Comm'n*, 291 F.Supp. 2d 443, 455 (S.D.W.Va. 2003), *aff'd* 396 F.3d 348 (4th Cir. 2005) (finding that "there can be little doubt that the proceedings before the PSC were 'judicial in nature'" when they were conducted in an adversarial, trial-like setting, with discovery, witness testimony and exhibits). The important issue here is whether a party must exhaust his state appellate remedies before seeking relief in federal district court.

In *Huffman v. Pursue, Ltd.*, 406 U.S. 592, 608 (1975), the Supreme Court stated that "a necessary concomitant of *Younger* is that a party must exhaust his state appellate remedies before seeking relief in the District Court." Thus, "a party may not procure federal intervention by terminating the state judicial process prematurely — forgoing the state appeal to attack the trial court's judgment in federal court." *New Orleans Pub. Serv.*, 491 U.S. at 369; *see also Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 (1986)(applying *Younger* to state administrative proceedings).

Relying on the principles articulated in *Huffman* and *Ohio Civil Rights Commission*, we have similarly held that "a defendant to a coercive administrative proceedings must exhaust his state adminis-

trative and judicial remedies and may not bypass them in favor of federal court proceeding in which he seeks effectively to 'annul the results' of a state administrative body." *Moore v. City of Asheville, N.C.*, 396 F.3d 385, 388 (4th Cir. 2005).

In an attempt "to short-circuit[ ] both the agency's ability to interpret its statutes in conformity with the Constitution and the state court's ability to correct constitutionally infirm agency decisions," Laurel forwent state court judicial review of its administrative order simply because it wanted to litigate in a federal forum. *Id.* at 396. *Younger* abstention was created to prevent such disruption of state administrative and judicial processes.

Indeed, the purpose of abstention is to ensure that state courts may construe state law in a way that avoids unwarranted determinations of federal constitutional questions and to maintain comity between the state and federal courts. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987). Hence, "federal intervention before a state court has had the opportunity to review an agency's decision is no less an 'aspersion on the capabilities and good-faith of state appellate courts,' and no 'less a disruption of the State's efforts to protect interests which it deems important." *O'Neil v. City of Philadelphia*, 32 F.3d 785, 791 (3d Cir. 1994) (quoting *Huffman*, 420 U.S. at 608).

Federal intervention with Laurel's claim would not only cast aspersions on the MDE process of determining liability but would also annul the results of MDE's determination that Laurel is in fact liable for the Thomas well failure. Although Laurel purports to fall within an exception to *Younger* by seeking wholly prospective relief — a declaration that the Dewatering Act as applied violates constitutional requirements and an injunction against future application of the Dewatering Act — this claim is without merit. *See Wooley v. Maynard*, 430 U.S. 705, 711 (1977) (holding *Younger* abstention inapplicable where the suit is in no way "designed to annul the results of a state trial" and the relief sought is wholly prospective). Laurel seeks attorney fees incurred in this suit as well as at the administrative level. Laurel also requests a declaration that the Dewatering Act "as applied" to the Thomas well violated its constitutional rights.

We fail to see how Laurel's requested relief may be characterized as "wholly prospective." Laurel seeks to not only be compensated for

an injury that has already occurred but also to annul the results of the administrative proceedings. *Moore*, 396 F.3d at 397. Therefore, we hold that whereas here Laurel seeks to invalidate a state judgment by filing a federal action and circumventing state-court judicial remedies, the state proceedings remain "pending" within the meaning of *Younger* abstention. And based on the relief Laurel requests the "wholly prospective relief" exception is also inapplicable.

Next, we must examine whether the proceedings at issue implicate an important state interest. Laurel argues that the state's regulation of water resources, particularly groundwater is not a paramount or vital state concern. We disagree. Matters relating to property law, land use, and zoning ordinances have frequently been held to be "important" state interests justifying *Younger* abstention. *Harper v. Pub. Serv. Comm'n of WVA*, 396 F.3d 348, 353 (4th Cir. 2005).

Maryland enacted the Dewatering Act "[i]n order to conserve, protect, and use water resources of the State in accordance with the best interest of the people of Maryland." Md. Envir. Code § 5-501. Moreover, "it is the policy of the State to control, as far as feasible, appropriation or use of surface waters and groundwaters of the State." *Id.* Hence, the district court properly found that regulation of ground water effected by the Dewatering Act implicates important, substantial, and vital state interests.

Further, Laurel was provided an opportunity to raise its constitutional challenges at the administrative level. The final prong of *Younger*'s abstention test is whether the claimant is afforded an adequate opportunity to raise his constitutional claims in the state forum. Laurel was not only afforded the opportunity but did in fact raise its constitutional claim at the administrative level. (J.A. 33.) Thus, in sum, the three prong test for *Younger* abstention is met.

Because Laurel failed to exhaust its administrative remedies and could have asserted its constitutional claims in the state proceedings and the state has a legitimate interest in regulating the groundwater, we hold that principles of comity demand application of *Younger* abstention. Accordingly, the district court did not abuse it discretion in abstaining from hearing Laurel's federal claims in deference to the State of Maryland's vital interest in regulating dewatering.

## IV.

For the reasons stated, the judgment of the district court is affirmed.

*AFFIRMED*